Andre Maurice
7210 Potranco Rd Ste 1201
San Antonio, TX 78251
Tel: (210) 776-3544
*Plaintiff, Pro Se*

F I L E D

JUL 1 9 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

|  |  |
|---|---|
| ANDRE MAURICE, | Civil Action No. |
| *Plaintiff*, | **COMPLAINT** |
| - against - | <u>**DEMAND FOR JURY TRIAL**</u> |
| UNITED STATES PATENT AND TRADEMARK OFFICE "USPTO", | SA21CA0681**XR** |
| *Defendants*, |  |

Plaintiffs Andre Maurice (collectively, "Plaintiff") by pro se, allege as follows against Defendants United States Patent and Trademark Office "USPTO" ( collectively, "Defendants")

### DISCOVERY LEVEL

1.    Pursuant to Rules 190.1 and 190.3 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under level 2.

### <u>PARTIES</u>

2.    Plaintiff Andre Maurice is a citizen  and resident of San Antonio, Texas.

3.    Upon information and belief Defendants United Sates Patent and Trademark Office  (USPTO) is engaged in the online service of paten and trademark

applications and the principal place of business is 600 Dulany Street, Alexandria, VA 22314.

## JURISDICTION AND VENUE

4.    Jurisdiction is proper in this Court pursuant to Chapter 15 of the Texas Civil and Remedy Code all or a substantial part of the acts giving raise to this action arose in San Antonio, Texas.

5.    The court has personal jurisdiction over Defendants because upon information and belief. Defendants are doing business in Texas to supply goods or services in Texas the claims and issue arise out of their transaction of business and/or supplying goods or services directly to plaintiffs residing in Texas.

## NATURE OF ACTION

6.    This is an action to redress Defendants unlawful practices against Plaintiff, including its discriminatory treatment and bias of Plaintiff due to his race and its unlawful retaliation against him through out the application review process. Defendants unlawful discrimination in violation of Civil Rights Act of 1866, 42 U.S.C § 1981.

7.    Feyonce is a term created by Plaintiff in the year 2015. Plaintiff created a business based off his term. Feyonce is a registered business in Texas. On November 30, 2015 Plaintiff applied for a trademark for exclusive rights to the term. Plaintiff is the intellectual property owner of Feyonce. Plaintiff first used in commerce on November 1, 2015.

8.    On March 22, 2016 Plaintiff received an office action for likelihood of confusion, Prior Pending Application, and Filing Basis Omitted.

9.    The Plaintiff settled a likelihood of confusion federal lawsuit on December 17, 2018 the case was dismissed with prejudice. Please see the full dismissal attached as Exhibit A. Due to the outcome of the *Maurice v. Beyonce* case likelihood of confusion issue is no longer valid.

10.    When Defendants were informed of the settlement. Defendants retaliated by issuing further office actions including Failure to Function as a Trademark - Widely Used Message and Ornamental use and purposely giving plaintiff stricter scrutiny than other applicants and depriving Plaintiff of his intellectual property rights.

11.    One applicant in particular which is a direct competitor of Plaintiff applied for the term "FEYONCE BAE Z" on November 9, 2018. Defendants willful abuse of power granted the registration for exclusive trademark rights on August 9, 2019. This third party applicant did not receive an office action for likelihood of confusion or Failure to Function - widely used message and Ornamental use to the term FEYONCE. If Feyonce was a widely used message a disclaimer would be required. Please see attached Exhibit B a full timeline as stated on Defendant website of both the Plaintiffs Application and the direct competitors application.

12.    The applicant for FEYONCE BAE Z is a direct competitor of the Plaintiff as they both offer coffee mugs. Coffee mugs is listed on Plaintiffs application filed on and first used in commerce November 30, 2015.

13.    Defendants also displayed unjust bias and abuse of power by approving the specimens for FEYONCE BAE Z and YONCE both applicants submitted a decorative item for the specimen required and was approved by the Defendants. According to Defendants USPTO website a decorative item is not allowed for

3

trademark approval. See Attached Exhibit C for the Defendants Ornamental Use Page on their website. Below is a comparison of the 3 specimens stated, only Plaintiff's specimen was disapproved for ornamental use and was issued an office action. Defendants allowed other applicants a quick and easy way to register a mark while giving Plaintiff stricter scrutiny.



| Approved Specimen by Defendants Also a Direct Competitor of Plaintiff | Approved Specimen by Defendants | Plaintiffs Specimen Disapproved by Defendants |
| --- | --- | --- |

14.     The Defendants actions have caused and are causing immediate and irreparable harm to Plaintiff. To redress the harm that the Defendants are causing to the Plaintiff. Plaintiff brings claims for Civil Rights Violation, Property Rights Violation, Violation of Equal Right, Abuse of Power and related claims. Plaintiffs seek injunctive, monetary, equitable relief on account of Defendants egregious willful and wonton activities including exemplary damages attorney fees and cost.

## FACTS

**Plaintiffs and their trademark**

15.    Plaintiff first used the term FEYONCE in commerce in November 1 of 2015. Plaintiff applied for the trademark FEYONCE on November 30, 2015 at the time no active trademarks contained the term. Plaintiff offered FEYONCE products for sale online including an Online website created by the plaintiff. FEYONCE is a business registered in the State of Texas.

**Defendants and Their Misconduct**

16.    Upon information and belief Defendant is a fee-funded agency of the U.S Department of Commerce.

17.    Upon information and belief the role of the Defendants is to grant patents for the protection of inventions and to register trademarks and service marks for products and services.

18.    Defendants issued out the first office action on March 22, 2016 which included likelihood of confusion, prior pending application and  filing basis omitted.

19. On April 6, 2016 a likelihood of confusion lawsuit was filed in Federal court against Plaintiff from the likelihood of confusion term owner *Maurice v. Beyonce*

20.    Defendants were informed of the incoming suit and failed to list incoming suit on the document section of the USPTO website of the two marks involve with the likelihood of confusion.

21.    On September 19, 2016 Plaintiff responded to the Office Action stating there was a settlement on the likelihood of confusion. On October 31, 2016 Defendants suspended Plaintiffs application pending prior application.

22.    On Sept. 30, 2018  Federal Judge Allison Nathan states that 'the claim alone does not establish likelihood of confusion'. *Maurice v. Beyonce* On December 17,

2018 the case was settled and voluntarily dismissed with prejudice whereas no likelihood of confusion issue is valid.

23.     On January 15, 2019 Plaintiff responds to the suspension with judges order and the dismissal of the likelihood of confusion case.

24.     March 5, 2019 Defendants retaliated and possibly conspired against Plaintiff with an additional Office Action with more issues for the plaintiff to overcome. Including Failure to Function as a Trademark - Widely Used Message and Failure to Function as a Trademark Ornamental Use.

25.     Defendants willfully and intentionally gave the plaintiff stricter scrutiny than other applicants described herein who did not receive Ornamental Use or Widely Used Message.

26.     Defendants conduct has injured Plaintiffs, and if not enjoyed, will continue to injure Plaintiff and his intellectual property.

27.     Plaintiff will suffer irreparable harm to their business reputation and the goodwill associated with their brand because he has no control over the sale and use of his intellectual property which was first in use by Plaintiff in 2015. This is even more so because Defendants have granted the term in question to a direct competitor of Plaintiff.

28.     This competitor applied for the term FEYONCE BAE Z on November 9, 2018 and it was registered on August 6, 2019 granted by Defendants within 9 months.

29.     Defendants granted a trademark registration for the term YONCE and FEYONCE BAE Z with a decorative specimen. Defendants issued an Office Action to the Plaintiff for submitting a decorative specimen.

30.     Upon information and belief Defendants only issued an Office Action for widely used message to Plaintiff other applicants did not receive a widely used message for the term FEYONCE in which a disclaimer to the term would be required.

31.     Upon experiencing unfair misconduct time and time again. Plaintiff send a letter to Defendants in a final attempt to correct their unjust misconduct. In willful disregard of Defendant's unfair misconduct and stricter scrutiny of Plaintiffs intellectual property of which Defendants were on actual notice. Defendants completely ignored Plaintiff. Such ongoing conduct reflects Defendants' defiance, entitlement and willful intent to violate Plaintiffs rights.

## Plaintiffs Are Suffering Irreparable Harm

32.     The deception and misconduct created by Defendants is causing Plaintiff irreparable harm. Plaintiff has been unable to protect his intellectual rights to his mark.

33.     A direct result of Defendants action has cause unfair competition and dilution of Plaintiffs brands.

34.     Plaintiff is suffering irreparable harm and the goodwill associated with Plaintiffs brand and trademark.

35.     Upon information and belief Defendants know, and at all relevant times knew and possibly conspired to give Plaintiff stricter scrutiny than other applicants described herein.

36.     Upon information and belief Defendants Know and at all relevant times knew there was biased happening with Plaintiff and other applicants as described herein.

37.    Upon information and belief Defendants undertook the actions described herein with the deliberate intend to deny Plaintiff the right to register his trademark and to dilute the distinctiveness of the mark.

38.    Upon information and belief Defendants denied Plaintiff his exclusive rights to his intellectual property.

39.    Defendants conduct described herein is intentional, fraudulent, malicious, willful and wanton.

## FIRST CLAIM
### VIOLATION OF EQUAL RIGHTS
### 42 U.S.C S 1981

40.    Plaintiff hereby repeat and reallege the foregoing paragraphs of the complaint as if fully set forth herein.

41.    Plaintiff applied for the trademark FEYONCE on November 30, 2015 and was denied.

42.    Defendants granted a direct competitor of the Plaintiff the exclusive rights to the term FEYONCE BAE Z without any Office Actions to the term FEYONCE as stated herein. Plaintiff was denied for likelihood of confusion and widely used message. If a term is a widely used message then a disclaimer would be required which would state 'No claim is made to the exclusive right to use 'FEYONCE' apart from the mark shown.' However the third party how did not face strict scrutiny and did not receive any Office Action for Widely Used Message as Plaintiff did.

43.    Defendants did not treat applicants equal and is a direct violation of Plaintiffs Equal Rights as stated in 42 U.S.C § 1981.

44.     As a direct and proximate result of Defendants wrongful acts, Plaintiff suffered and continues to suffer and/or are likely to suffer damage to their business reputation and goodwill.

45.     Defendants will continue to be unfair and block Plaintiff from his exclusive rights to his term unless restrained.

46.     Defendants unlawful conduct constitutes a willful and wanton violation of Section 1981, was malicious and intended to injure Plaintiff and was done with conscious disregard of Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

## SECOND CLAIM
### VIOLATION OF PROPERTY RIGHTS
### 42 U.S.C § 1982

47.     Plaintiff hereby repeat and reallege the foregoing paragraphs of the complaint as if fully set forth herein.

48.     Plaintiff created a term unique is sound, meaning and connotation to the term FEYONCE in the year 2015.

49.     Plaintiff applied for the trademark FEYONCE on November 30, 2015 whereas,  no active applications for the term existed.

50.     Plaintiff received stict scrutiny from Defendants during the entire review process without any official opposition from the likelihood for confusion term owner.

51.     Defendant possibly conspired to prevent Plaintiff from receiving trademark rights to the term FEYONCE.

52.    Upon information and belief, Defendants granted the term FEYONCE BAE Z to a direct competitor of the Plaintiff with exclusive right to the term.

53.    Upon information and belief, Defendants did not issue a likelihood of confusion to the unrelated party.

54.    Upon information and belief, Defendants did not require a disclaimer for the term FEYONCE for being a Widely Used Message.

55.    Upon information and belief, Defendants did not issue an Office Action for Failure to Function- Ornamental Use for the specimen used by the third party.

56.    Upon information and belief, Defendants allowed a direct competitor to own the exclusive rights to the term for coffee mugs. The Plaintiff applied for the term for rights to coffee mugs as stated on the Plaintiffs application see Exhibit D.

57.    The actions of the Defendants are in direct violation of 42 U.S.C § 1982 all citizens of the United States shall have the same right to inherit, purchase, lease, sell, hold, and convey real, and personal property.

58.    Plaintiff applied for the mark first and has a right to own the exclusive rights to the term FEYONCE.

59.    As a direct and proximate result of Defendants wrongful acts, Plaintiff suffered and continues to suffer and/or are likely to suffer damage to their business reputation and goodwill.

60.    Defendants will continue to be unfair and block Plaintiff from his exclusive rights to his term unless restrained.

61.    Defendants unlawful conduct constitutes a willful and wanton violation of Section 1981, was malicious and intended to injure Plaintiff and was done with

conscious disregard of Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

## THIRD CLAIM
### DEPRIVATION OF RIGHTS
### 42 U.S.C § 1983

62.    Plaintiff hereby repeat and reallege the foregoing Paragraphs of the complaint as if fully set forth herein,

63.    Upon information and belief, Defendants denied the Plaintiff his right to own the copyrights to his term he first use in commerce in 2015, FEYONCE.

64.    Upon information and belief, Defendants granted the trademark rights to a direct competitor of Plaintiff and did not issue the same scrutiny that Plaintiff had.

65.    Upon information and belief, Defendants did not accept any of the Plaintiff Office Action responses for Likelihood of Confusion or Failure to Function-Widely Used Message.

66.    The actions of the Defendants deprived the Plaintiff of his right to own the mark he created in 2015 and potentially ripping generational wealth from Plaintiff and is in direct violation of 42 U.S.C § 1983 and defendant is entitled to equitable and punitive damages.

## FOURTH CLAIM
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### 42 U.S.C § 1985

67.    Plaintiff hereby repeat and reallege the foregoing Paragraphs of the complaint as if fully set forth herein,

68.     Upon information and belief, Defendants conspired within the office and with other applicants to keep Plaintiff from receiving exclusive trademark rights to FEYONCE.

69.     Upon information and belief, Defendants conspired with various online retailer to allow them to profit from sales bearing the term FEYONCE in efforts to dilute the mark Feyonce. Defendants took advantage of the plaintiff lawsuit settlement to allow others to use the mark in commerce and to prevent the Plaintiff from receiving trademark rights.

70.     Defendants used online retailers to prevents Plaintiff from acquiring the mark without exclusive rights the Plaintiff has no control of the sales or profit of products bearing the term Feyonce.

71.     The acts of the Defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless restrained and enjoined by this Court, such harm will continue.

## FIFTH CLAIM
### NEGLECT TO PREVENT
### 42 U.S.C § 1986

72.     Plaintiff hereby repeat and reallege the foregoing paragraph of the complaint as if fully set fourth herein.

73.     Plaintiff first stated bias on March 16, 2020 in the applicant Request for Consideration it was denied on March 24, 2020.

74.     Plaintiff stated unjust bias again in dept on Applicants brief submitted to the Trademark Trial and Appeal Board on May 23, 2020. Which was also denied and neglected to prevent the bias.

75.     Plaintiff sent Defendants demand letter with intent to sue which was also disregarded.

76.     Upon information and belief Defendants know and at all relevant times knew about bias and discrimination happening against the Plaintiff.

77.     Upon information and belief Defendants choose to disregard and ignore bias and discrimination claims against Plaintiff stating "They have not been considered" in the Final Decision.

78.     Upon information and belief Defendants choose not to intervene or make right the wrongful acts that the Plaintiff has occurred.

79.     Upon information and belief, Defendants had the power to prevent or aid in preventing the wrongful acts and completely ignore the bias being done within the Office.

80.     As a direct and proximate result of Defendants wrongful acts, Plaintiff has suffered and continue to suffer and/or are likely to suffer damage to their business reputation, and goodwill. Defendants will continue to allow unfair bias and discrimination unless restrained, Plaintiffs mark was granted to a direct competitor of Plaintiff by the Defendants. As a result from the trademark denial Plaintiff is unable to prevent others in using his intellectual mark.

81.     Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining all persons acting in concert with defendants from engaging in further acts of using Plaintiffs mark for profits and to redress Plaintiff his exclusive rights to his intellectual property.

## SIXTH CLAIM
## FALSE DESIGNATION OR ORGIN, FALSE DESCRIPTIONS, DILUTION
## 15 USC § 1125

82.    Plaintiff repeat and realledge the foregoing paragraphs of the complaint as if fully set forth herein.

83.    Unfair competition, False origin and dilution arose when defendants granted trademark rights to a direct competitor of Plaintiff.

84.    Plaintiffs application include various items including coffee mugs. Plaintiff even submitted a specimen of a Feyonce Brand coffee mug, which was approved by Defendants.

85.    Sec 2 of the Sherman Act bands any attempt to monopolize or conspire to monopolize power.

86.    Upon information and belief defendants know and at all relevant times knew that the term FEYONCE was used for an application for a direct competitor of Plaintiff.

87.    Upon information and belief Defendants granted a false designation of the origin of the term FEYONCE.

88.    The forgoing acts of Defendants constitute unfair competition, False origin and dilution in violation of Section 43 of the Lanham Act, 15 USC § 1125.

89.    As a direct and proximate result of Defendants wrongful acts consumers are confused with the false designation of origin and dilution. Defendants wrongful acts has caused and is causing great and irreparable harm and damage to Plaintiff unless restrained by this court, such irreparable harm will continue.

90.    Plaintiff has no adequate remedy at law and is entitled to a temporary injunction pending trail restraining other parties from selling, marketing, and profiting off Plaintiffs intellectual property that is a direct and proximate result from Defendants wrongful acts.

91.    Plaintiffs are furthermore entitled to recover from Defendants the actual damages that is sustained and/or is likely to sustain as a direct result of Defendants wrongful acts.

92.    Plaintiff is further entitled to recover ownership of valid registration of the trademark FEYONCE.

## SEVENTH CLAIM
## UNFAIR OR DECEPTIVE ACTS OR PRACTICES
## 15 U.S.C § 45

93.    Plaintiff hereby repeat and reallege the foregoing paragraphs of the complaint as if fully set forth herein.

94.    Plaintiff first used trademark in commerce on November 1, 2015 and applied for the trademark on November 30, 2015.

95.    Upon information and belief Defendant granted registration to the term in question to a direct competitor of Plaintiff. That person applied for the term FEYONCE BAE Z Defendants granted the registration within 9 months; Plaintiff spent 5 years fighting to earn his mark and was denied.

96.    Upon information and belief Defendants granted registration to a trademark for the term YONCE and FEYONCE BAE Z with a decorative specimen. Defendants issued an Office Action to the Plaintiff for submitting a decorative specimen.

15

97.    Upon information and belief Defendants only issued an Office Action for Failure to Function - Widely Used Message to Defendants other applicants did not receive any Office Action for the term FEYONCE as Plaintiff had.

98.    Defendants handled Plaintiffs application with bias and strict scrutiny then other applicants described herein, in a manner to prevent Plaintiff from owning exclusive rights to his intellectual property.

99.    Defendants acts constitute unfair and deceptive acts or practices under 15 U.S.C § 45 (a)(4).

100.    As a direct and proximate result of Defendants wrongful acts, Plaintiff suffered and continues to suffer and/or are likely to suffer damage to their business reputation and goodwill.

101.    Defendants will continue to be unfair and block Plaintiff from his exclusive rights to his term unless restrained.

102.    Plaintiff was treated unfair and was given stricter scrutiny than other applicants as stated herein and will cause irreparable damage to Plaintiff.

103.    Plaintiff has no adequate remedy at law and is entitled to a temporary injunction restraining other parties from selling, marketing, and profiting off Plaintiffs mark pending trail.

104.    Plaintiffs are furthermore entitled to recover from Defendants the actual damages that is sustained and/or is likely to sustain as a direct result of Defendants wrongful acts.

105.    Because of the willful nature of Defendants wrongful acts Plaintiff is entitled to an award of exemplary damages under 15 U.S.C § 45.

**EIGHTH CLAIM**
**ABUSE OF POWER**
**25 CFR § 11.448(b)**

106.    Plaintiff repeat and real ledge the forgoing paragraphs of the complaint as if fully set forth herein.

107.    Plaintiff faced stricter scrutiny than other applicants as stated herein, Every time Plaintiff responded to the Office Actions issued the Defendants would purposely give Plaintiff more Office Actions to overcome in a total of 5 years.

108.    Defendants retaliated and possibly conspired to keep Plaintiff from receiving the trademark by granting a direct competitor the exclusive rights to the term FEYONCE and completely ignoring the fact that the Likelihood of confusion was settled in Federal Court. *Maurice v. Beyonce.*

109.    Defendants took extra steps to ensure Plaintiff was not granted the trademark. Defendants are in a position of power and chose to abuse this position by using their monopoly powers by picking and choosing who owns a trademark.

110.    Defendants also choose to disregard the unjust bias and neglected to prevent or aid in the office even when evidence was provided.

111.    Defendants had no intentions on approving Plaintiffs application but continued to collect fees.

112.    As a direct and proximate result of Defendants unlawful actions Plaintiff has suffered and is suffering irreparable harm unless restrained by this Court he Plaintiff will continue to suffer.

## PRAYER FOR RELIEF

113.    **WHEREFORE,** Plaintiff respectfully request judgment against Defendants and their respective partners, agents and employees on behalf of any of the foregoing as follows

114.    An Order directing Defendants to grant Plaintiff trademark registration that he would have had if not for the defendants discriminatory, retaliation and/or otherwise unlawful treatment of him.

115.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary damages and/or economic damages, including, but not limited to the loss of past and future income, wages, compensation, career security, generational wealth and other benefits of owning a business.

116.    An award of damages in an amount to be determined at trial, plus prejudgement interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self esteem, self confidence, and personal dignity.

117.    An award of damages in the amount to be determined at trial plus prejudgment interest to compensate plaintiff for harm to his professional and personal reputation and lost of career fulfillment.

118.    An award of damages in amounts pertaining to each to be determined at trial, including punitive damages and all other monetary and/or non monetary losses

suffered by plaintiff in an amount to be determined by trail plus pre-trial judgment interest.

119.   An award of treble damages on account of the willful nature of the Defendant.

121.   Requiring Defendants to pay the Plaintiff their costs and expenses in this action including any attorneys' fees and costs; and

122. Granting Plaintiffs such other and further relief as the Court deems just and proper.


Dated: San Antonio, Texas
       July 19, 2021

                                              Respectfully submitted,


                                              Andre Maurice
                                  7210 Potranco Rd Ste. 1201
                                     San Antonio, TX 78251
                                  Telephone: (210) 776-3544
                                  feyonceinc@yahoo.com
                                            *Plaintiff, Pro Se*

## **Certificate of Service**

On July 19, 2021 I submitted the foregoing document with the clerk of court for

the U.S District Court Western District of Texas San Antonio Division by in person at

U.S District Clerk's Office 655 E. Cesar E. Chavez Blvd. San Antonio, TX 78206. I

hereby certify that I have served all counsel and/or parties of record electronically or by

another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

Dated: July 19, 2021

Andre Maurice
7210 Potranco Rd Ste.1201
San Antonio, TX 78251
Tel: (210) 776-3544
*Plaintiff, Pro Se*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEYONCÉ GISELLE KNOWLES-CARTER
and BGK TRADEMARK HOLDINGS, LLC,

                              Plaintiffs,

-- against --

FEYONCE INC., LEE LEE, LEANA LOPEZ,
and ANDRE MAURICE,

                              Defendants.

16 Civ. 2532 (AJN) (JLC)

### NOTICE OF PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF THE ACTION WITH PREJUDICE

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, dated December 17, 2018, the undersigned hereby moves this Court on behalf of plaintiffs Beyoncé Giselle Knowles-Carter and BGK Trademark Holdings, LLC in the above-captioned action, before the Honorable Alison J. Nathan, United States District Judge, at the United States District Court for the Southern District of New York – Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, Courtroom 906, on a date and time to be determined, for an order dismissing the action in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), and for such other relief as this Court deems just and proper.

Case 1:16-cv-02532-AJN-JLC   Document 109   Filed 12/17/18   Page 2 of 2

Dated:  December 17, 2018
       Los Angeles, California

LATHAM & WATKINS LLP

By:     /s/ Marvin S. Putnam
        Marvin S. Putnam
        Laura R. Washington (*pro hac vice*)
        10250 Constellation Blvd. #1100
        Los Angeles, California 90067
        Telephone: 424.653.5500
        Facsimile: 424.653.5501
        Email: marvin.putnam@lw.com
               laura.washington@lw.com

*Attorneys for Plaintiffs*

# EXHIBIT B

# Plaintiffs Timeline

| | | tsdr.uspto.gov | ↻ |
|---|---|---|---|

**🔍 Trademark Status & Document Retrieval (TSDR) ❓**

| SEARCH | MULTI-SEARCH ❓ |
|---|---|

| US Serial, Registration, or Reference No. ↕ | 86834686 | Status | Documents |

26 document(s) found

| STATUS | DOCUMENTS ❓ | ⬇ Download ▲ | 🖨 Print Preview |
|---|---|---|---|

**Generated on:** This page was generated by TSDR on 2021-07-14 18:24:32 EST

**Trademark Docs:** 26                    **Proceedings Docs:** click to load proceedings

**Assignments Docs:** click to load assignments

**▼ Trademark Documents**                                                    ▼ Expand All

| Select All | Create/Mail Date ▲ | Document Description | Document Type |
|---|---|---|---|
| ☐ | Dec. 22, 2020 | Notice of Abandonment | XML |
| ☐ | Jul. 22, 2020 | Offc Action Outgoing | XML |
| ☐ | Mar. 24, 2020 | Reconsideration Letter | MULTI |
| ☐ | Mar. 18, 2020 | Amendment and Mail Process Complete | MULTI |
| ☐ | Mar. 16, 2020 | TEAS Request Reconsideration after FOA | MULTI |
| ☐ | Sep. 17, 2019 | Offc Action Outgoing | MULTI |
| ☐ | Sep. 15, 2019 | Notation to File | XML |
| ☐ | Aug. 27, 2019 | Amendment and Mail Process Complete | MULTI |
| ☐ | Aug. 23, 2019 | Response to Office Action | MULTI |
| ☐ | Aug. 23, 2019 | Specimen | JPEG |
| ☐ | Mar. 18, 2019 | Notation to File | XML |
| ☐ | Mar. 05, 2019 | Offc Action Outgoing | MULTI |
| ☐ | Jan. 18, 2019 | Amendment and Mail Process Complete | MULTI |
| ☐ | Jan. 15, 2019 | TEAS Response to Suspension Inquiry | MULTI |
| ☐ | Jan. 15, 2019 | Notation to File | XML |
| ☐ | Oct. 09, 2018 | Notation to File | XML |
| ☐ | Nov. 14, 2017 | Notation to File | XML |
| ☐ | Oct. 31, 2016 | Suspension Letter | XML |
| ☐ | Oct. 14, 2016 | Amendment and Mail Process Complete | MULTI |
| ☐ | Sep. 19, 2016 | Response to Office Action | MULTI |
| ☐ | Sep. 19, 2016 | Specimen | JPEG |
| ☐ | Mar. 22, 2016 | Offc Action Outgoing | MULTI |
| ☐ | Mar. 17, 2016 | XSearch Search Summary | XML |
| ☐ | Jan. 07, 2016 | Change of Address | XML |
| ☐ | Nov. 30, 2015 | Application | MULTI |
| ☐ | Nov. 30, 2015 | Drawing | JPEG |

**▲ Proceedings Documents - Click to Load**

# Direct Competitors Timeline



| Select All | Create/Mail Date | Document Description | Document Type |
|---|---|---|---|
| ☐ | Aug. 06, 2019 | Registration Certificate | PDF |
| ☐ | May 21, 2019 | OG Publication Confirmation | XML |
| ☐ | May 01, 2019 | Notice of Publication | XML |
| ☐ | May 01, 2019 | Notification Of Notice of Publication | XML |
| ☐ | Apr. 16, 2019 | TRAM Snapshot of App at Pub for Oppostn | MULTI |
| ☐ | Apr. 03, 2019 | Amendment and Mail Process Complete | MULTI |
| ☐ | Mar. 25, 2019 | Response to Office Action | MULTI |
| ☐ | Mar. 25, 2019 | Specimen | JPEG |
| ☐ | Mar. 20, 2019 | Offc Action Outgoing | XML |
| ☐ | Mar. 05, 2019 | TEAS Rev. App and/or COA of Atty/Dom.Rep | XML |
| ☐ | Mar. 01, 2019 | Offc Action Outgoing | MULTI |
| ☐ | Feb. 23, 2019 | Amendment and Mail Process Complete | MULTI |
| ☐ | Feb. 21, 2019 | Response to Office Action | XML |
| ☐ | Feb. 21, 2019 | Offc Action Outgoing | MULTI |
| ☐ | Feb. 19, 2019 | XSearch Search Summary | XML |
| ☐ | Nov. 09, 2018 | Drawing | JPEG |
| ☐ | Nov. 09, 2018 | Specimen | JPEG |
| ☐ | Nov. 09, 2018 | TEAS RF New Application | MULTI |

▲ Proceedings Documents - Click to Load

# EXHIBIT C

# Ornamental Refusal Page



## When does the USPTO issue an ornamental refusal?

We will generally refuse your application as ornamental if your specimen shows that the use of your mark is only decorative or ornamental. That is, when use of your mark does not clearly identify the source of your goods and distinguish them from the goods of others; which is required for proper trademark use.

Examples of ornamental use of a mark:

- **A quote prominently displayed across the front of a t-shirt, such as "The Pen is Mightier than the Sword."** Most purchasers would perceive the quote as a decoration, and would not think that it identifies the manufacturer of the t-shirts (the source of the t-shirts could be Hanes® or Champion®, for example, as shown by the neck-tag).
- **A logo on the front of a hat.** The logo is associated with an organization, like a sports team, which did not manufacture the hat.
- **Stitching designs on the back pocket of a pair of jeans.** Purchasers are accustomed to seeing embellishments on jean pockets and would not think this embroidery design identifies the source of the jeans.
- **A floral pattern on tableware or silverware.** A purchaser would likely see this pattern as merely decorative and would not think it identifies the source of the tableware or silverware.
- **The phrase "Have a Nice Day" or a smiley face logo.** Everyday expressions and symbols that commonly adorn products are normally not perceived as identifying the source of the goods.

For more information, see Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§1051-1052, 1127; In re Right-On Co., 87 USPQ2d 1152 (TTAB 2008) (back-pocket design on jeans was merely ornamental and did not show trademark use); In re Villeroy & Boch S.A.R.L., 5 USPQ2d 1451 (TTAB 1987) (floral pattern design on dishes was merely ornamental and did not show trademark use); and TMEP §§904.07(b), 1202.03 et seq.

## Proper non-ornamental use of a mark

There is no definitive place to affix your mark to your goods to avoid an ornamental refusal. However, the location, size and dominance of a mark have a big impact on how the public perceives it.

Examples of proper non-ornamental trademark use:

- **Discrete wording or design on the pocket or breast portion of a shirt.** A purchaser would typically associate the small logo on a shirt pocket or breast area with the manufacturer or the source of the shirt.
- **A tag on the inside of a hat or garment.** A purchaser would associate a logo on the tag with the maker of the garment.
- **Logo on a tag above the back pocket of a pair of jeans.** A purchaser would typically associate this mark with the manufacturer of the jeans.
- **A small logo stamped on the back of a dinner plate or bottom of a coffee mug.** Purchasers are accustomed to seeing a mark used in this location to identify the source of the tableware.

# EXHIBIT D

# Plaintiffs Application

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 86834686 |
| **MARK INFORMATION** | |
| *MARK | FEYONCE |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | FEYONCE |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Andre Maurice |
| *STREET | 134 Paramount Ave |
| *CITY | San Antonio |
| *STATE (Required for U.S. applicants) | Texas |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. applicants) | 78228 |
| PHONE | 8303578458 |
| EMAIL ADDRESS | XXXX |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | individual |
| COUNTRY OF CITIZENSHIP | United States |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| INTERNATIONAL CLASS | 025 |
| *IDENTIFICATION | Apparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Athletic shirts; Camouflage shirts; Camp shirts; Collared shirts; Dress shirts; Fishing shirts; Gift packages sold as a unit consisting primarily of a sweatshirt and also including a photo frame, a coffee mug, and a tote bag; Golf pants, shirts and skirts; Golf shirts; Graphic T-shirts; Henley shirts; Hooded sweat shirts; Hooded sweatshirts; Hunting shirts; Knit shirts; Long-sleeved shirts; Night shirts; Open-necked shirts; Over shirts; Pique shirts; Shirts; Shirts and short-sleeved shirts; Shirts and slips; Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Sleep shirts; Sport shirts; Sports shirts; Sports shirts with short sleeves; Sweat shirts; Sweatshirts; T-shirts; Tee shirts; Wearable garments and clothing, namely, shirts; Women's clothing, namely, shirts, dresses, skirts, blouses; Woven shirts; Yoga shirts |